RAMÓN RIVERA GONZÁLEZ, recurrente *v.* EL REGISTRADOR DE LA PROPIEDAD DE AGUADILLA, recurrido.

Núm. 1158.—*Sometido:* Diciembre 1, 1944. *Resuelto:* Enero 25, 1945.

*José Veray, Jr.,* abogado del recurrente; *Ciro Malatrasi, Jr.,* Asesor Legal de la Junta de Planificación, Urbanización y Zonificación de Puerto Rico, como *amicus curiae;* el registrador recurrido compareció por escrito.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

Por escritura de 17 de septiembre de 1944 ante el notario José Veray, Jr., Julio Rivera y su esposa declararon ser dueños de una finca rústica radicada en el barrio Camaseyes de Aguadilla que mide once metros de frente por veintiuno de fondo. Linda por el norte y el oeste con solar de Julio Rivera, por el sur con la Carretera núm. 2 que conduce de Isabela a Aguadilla, y por el este con María Eugenia Alvarez antes, hoy Arturo Molinary. En el solar enclavan dos casas terreras de madera, una de las cuales mide 16 pies de frente por 16 de fondo, y la otra 16 pies de frente por veinte de fondo. Por la misma escritura Julio Rivera y su esposa segregaron de esa finca una parcela de once metros de frente por once de fondo y la vendieron a Ramón Rivera. La parcela vendida a Ramón Rivera se describe así:

"Rústica, solar radicado en el barrio Camaseyes de Aguadilla, que mide once metros de frente por once metros de fondo, o sea un área de ciento veintiún metros cuadrados, en lindes al norte y oeste con Julio Rivera; al este con Arturo Molinary, y al sur con la Carretera Insular núm. dos de Isabela a Aguadilla. Contiene una casa de madera, terrera y techada de zinc.''

Ramón Rivera presentó la escritura en el Registro de la Propiedad de Aguadilla, pero el registrador denegó su inscripción por no acompañarse certificación acreditativa de haberse dispensado la presentación del plano de lotificación requerido por la Ley de Planificación, Urbanización y Zonificación de Puerto Rico y el Reglamento de Lotificación, tomándose anotación preventiva.

En el recurso gubernativo interpuesto por Ramón Rivera se arguye que no tratándose de una venta de terreno en áreas urbanas o para urbanizaciones, el registrador erró al denegar la inscripción.

El artículo 2 de la citada ley prescribe que '' 'Lotificación' significa la división o subdivisión de un solar, predio o parcela de terreno en dos o más partes para la venta o para una nueva construcción, e incluye urbanización como hasta ahora se ha usado en la legislación de Puerto Rico.'' En el presente caso consta del Registro que con anterioridad a la aprobación de la ley habían sido ya construídas las dos casas de madera que enclavaban en la finca principal, una de las cuales fué la vendida a Ramón Rivera; pero la división de la parcela de terreno—la lotificación—no se llevó a efecto hasta el 22 de septiembre de 1944, cuando ya estaban en vigor tanto la Ley como el Reglamento de Lotificación. *Sepúlveda* v. *Registrador,* ante, pág. 449.

Al definir el término "lotificación," a los efectos de la ley, no se excluyen de su significado las parcelas de terreno donde existan edificaciones. Por consiguiente, cuando el 22 de septiembre de 1944 Julio Rivera y su esposa dividieron su solar de 231 metros cuadrados para vender la parcela a

Ramón Rivera, practicaron una lotificación contemplada por la ley.

██ Se arguye por el recurrente que el Reglamento de Lotificación se aplica a zonas o áreas urbanas y no a las rurales. El artículo 10 de la ley expresamente autoriza a la Junta de Planificación para adoptar reglamentos que rijan la lotificación de terrenos en Puerto Rico. Y el Reglamento de Lotificación aprobado a virtud de la ley dispone en su artículo 1 que toda lotificación (urbanización) de terrenos "tanto urbanos como rurales" se regirá por las disposiciones del Reglamento de Lotificación. Existiendo esa disposición expresa en el Reglamento de Lotificación, debemos concluir que a menos que esa disposición esté en conflicto con la ley, existe en la Junta facultad para hacer extensivo a las zonas rurales el Reglamento de Lotificación. Un examen de la ley demostrará que ninguno de sus artículos prohibe a la Junta reglamentar urbanizaciones en la zona rural. Por el contrario, el artículo 28 de la ley, refiriéndose al artículo 23 de la misma, que trata de los reglamentos de zonificación, dispone que "quedan específicamente eliminadas de los efectos del artículo 23 de esta ley las zonas rurales y agrícolas de Puerto Rico," lo que a *contrario sensu* significa que las zonas rurales y agrícolas de Puerto Rico, en cuanto no se trata de reglamentos de zonificación, están sujetas a los efectos de la ley. Es de conocimiento público la costumbre general en los países civilizados de hacer urbanizaciones a alguna distancia de las ciudades, y la reglamentación de tales urbanizaciones cae dentro del propósito general de la ley, expresado en su artículo 3, que dice así:

"Los poderes concedidos en esta Ley se ejercerán con el propósito general de guiar el desarrollo de Puerto Rico de modo coordinado, adecuado y económico, el cual, de acuerdo con las actuales y futuras necesidades y los recursos humanos, físicos y económicos, hubiere de fomentar en la mejor forma la salud, la seguridad, la moral, el orden, la conveniencia, la prosperidad, la defensa, la cultura, la solidez económica y el bienestar general de los actuales y

futuros habitantes, y aquella eficiencia y economía en el proceso de desarrollo, en la distribución de población, en el uso de las tierras y en las mejoras públicas que tiendan a crear condiciones favorables a tales fines.''

Y el citado artículo 10 de la ley, tratando del Reglamento de Lotificación, entre otras cosas prescribe:

''Al adoptar reglamentos y considerar subdivisiones de terrenos, la Junta se guiará por la conveniencia de evitar subdivisiones de terrenos en áreas que no estén listas para tales desarrollos debido a la falta de instalaciones, a la distancia de otras áreas construídas, o a otras deficiencias sociales, económicas y físicas, análogas.''

Es verdad que la casa construída en el solar vendido a Ramón Rivera había sido edificada mucho antes de aprobarse la Ley de Planificación, Urbanización y Zonificación de Puerto Rico, y a primera vista esta circunstancia parece indicar que la transacción objeto de la escritura no debe estar sujeta a la ley ni al Reglamento de Lotificación, ni tampoco al aprobado por el Procurador General de Puerto Rico por la autoridad conferídale por la ley. Pero a poco que reflexionemos sobre el asunto, nos daremos cuenta de que el Reglamento de Lotificación, independientemente de la construcción del edificio, exige ciertos requisitos en relación con el solar donde el edificio enclava, por ejemplo, el área del solar, su separación del límite de solares contiguos, abastecimiento de agua para el solar en forma que se ajuste a los requisitos del Departamento de Sanidad, área del patio en frente, al lado o detrás del edificio, etc. Si el solar donde enclava la casa vendida a Ramón Rivera no se ajusta a los requisitos exigidos por la ley, indudablemente que la Junta de Planificación podría requerir que de alguna manera se corrigiese la deficiencia, bien sea adquiriendo más solar o en alguna otra forma razonable dentro de las circunstancias. A estos efectos, prescribe el artículo 51 del Reglamento de Lotificación, que cuando se demuestre a la Junta que existen dificultades extraordinarias que impidan el cumplimiento ca-

bal del Reglamento, la Junta podrá modificar la aplicación de cualquier sección del mismo, siempre y cuando no se perjudique el bienestar público. La Ley no concede al registrador discreción alguna en cuanto a eximir de las obligaciones impuestas por la ley o los reglamentos. Su deber es rechazar el documento del cual se solicita inscripción si no se presenta el correspondiente plano aprobado por la Junta o la certificación de la correspondiente dispensa otorgada también por la Junta. Como en este caso no se presentó ni una ni otra cosa, actuó correctamente el registrador al denegar la inscripción del documento.

*Se confirma la nota recurrida.*