Vicente Zayas Pizarro, recurrente, v. La Junta de Planificación, Urbanización y Zonificación de Puerto Rico, querellada.

Núm. 10.—*Sometido:* Abril 14, 1948. *Resuelto:* Junio 25, 1948.

*Vicente Zayas Pizarro, pro se; Rafael R. Fuertes, Félix Bello y A. Sandín del Manzano,* abogados de la querellada.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

El recurrente es dueño de una finca conocida por "La Granja", la cual está parcialmente urbanizada, tiene una cabida de 31.93 cuerdas y radica en el Barrio "Pueblo", del término municipal de Adjuntas. Dicha finca fué urbanizada en parte, de conformidad con un plano levantado en enero de 1928, en el cual se trazaron todos y cada uno de los solares, calles, etc. que comprendían dicha urbanización, todo esto a tenor de lo dispuesto en la Ley núm. 69 de 3 de agosto de 1925 (pág. 367). El mencionado plano fué aprobado en cuanto a las calles en el mismo trazadas con los números 1, 2, 3 y 4 por el Gobierno Municipal de Adjuntas y por el Departamento de Sanidad en ese mismo año. En lo que se refiere a la calle núm. 6 del proyecto de urbanización no se tomó acción definitiva en cuanto a su urbanización. En 1 de febrero de 1945, el recurrente radicó ante la Junta de Planificación una solicitud, pidiendo se tuviera por ratificada la urbanización en cuanto a las cuatro calles que habían sido aprobadas desde el año 1928 y que se tomara la acción pertinente en cuanto al proyecto de urbanización sobre el cual no se había determinado nada definitivamente. Después de varios procedimientos ante la Junta, ésta dictó resolución con fecha 7 de agosto de 1947, en la cual, en síntesis, decretó:

1. Que el recurrente debería presentar a la Junta recurrida un plano de construcción de la calle núm. 6 del proyecto de urbanización, así como un plano topográfico del

área afectada por dicha calle, debiendo dar cumplimiento el urbanizador a los requisitos mínimos establecidos por el Reglamento de Lotificación de una calle local.

2. Que el recurrente debería proceder a la dotación de facilidades mínimas para las calles números 1, 2, 3 y 4, a saber, calles pavimentadas con superficie asfáltica dotadas de sus aceras, encintados, cunetas, así como las correspondientes acometidas individuales para servicios de acueducto, alcantarillado y alumbrado.

3. Que el recurrente debe hacer la transferencia correspondiente del área libre y de parque equivalente al 5 por ciento de los nuevos solares que se forman para ser servidos por esta nueva calle, así como el área de la calle misma.

Solicitó el recurrente la reconsideración de la mencionada resolución y ésta fué confirmada en todas sus partes el 17 de diciembre de 1947. Ambas resoluciones motivaron el presente recurso.

■ Se alega que la Junta de Planificación erró "al exigir la presentación por el recurrente del plano de construcción de la calle núm. 6 y plano topográfico del área afectada por dicha calle", y "al exigir la dotación de facilidades mínimas para las calles números 1, 2, 3 y 4."

Aun cuando fué incluída en el plano original de urbanización de 1928, propuesto por el recurrente, la calle núm. 6, como cuestión de hecho nunca fué construída o aceptada por la Municipalidad como lo fueron las otras cuatro calles. La Junta tiene, por lo tanto, autoridad para reglamentar su construcción. Véase *Zayas* v. *Registrador,* 68 D.P.R. 43.

■ Arguye el recurrente que las circunstancias concurrentes en este caso con respecto a la calle núm. 6 están fuera de lo normal y ordinario de tal forma que justificaban que por la Junta recurrida se diera aplicación a los artículos 51 y 54 del Reglamento de Planificación núm. 3, porque se trata de una calle y área de poca extensión que no justifican la erogación correspondiente a la preparación de planos de

construcción y topográfico y porque con motivo del ensanche de dicha calle a trece metros, cuando las demás ya urbanizadas únicamente tienen diez metros de ancho, los solares ya urbanizados quedarían mutilados y su cabida alterada. En apoyo de esta contención cita el caso de *Fortunet* v. *Junta de Planificación*, 67 D.P.R. 265. Los artículos antes citados disponen que:

"*Artículo 51*.—Cuando se demuestre a la Junta que existen dificultades extraordinarias que impiden el cumplimiento cabal de este Reglamento, la Junta podrá modificar la aplicación de cualquier sección o secciones del mismo, según sea el caso, siempre y cuando no se perjudique el bienestar público.

"*Artículo 54*.—Cuando, a juicio de la Junta, cualquier información requerida en este Reglamento fuere considerada innecesaria para emitir la adecuada decisión sobre cualquier proyecto de lotificación, la Junta podrá relevar al urbanizador de la presentación de dicha información."

No podemos convenir con la contención del recurrente. Los artículos 51 y 54, supra, son aplicables únicamente cuando existen dificultades extraordinarias que impidan el cumplimiento cabal del Reglamento. No se nos ha demostrado la exstencia de tales dificultades. Solamente se ha alegado que si se ensancha la calle núm. 6 a trece metros, esto mutilaría y alteraría la cabida de los solares. El mero hecho de que se altere la cabida de solares al construir una calle de acuerdo con el Reglamento promulgado por la Junta no constituye una dificultad extraordinaria que obligue a dicha Junta a dar aplicación a los artículos antes citados. El caso de *Fortunet* v. *Junta de Planificación*, citado por el recurrente, no es aplicable al de autos porque en dicho caso la prueba demostró que existían dificultades extraordinarias que impedían el cumplimiento cabal del Reglamento, consistentes en ciertas edificaciones permanentes en las colindancias de los solares, las cuales hubiera sido necesario derribar para que se pudieran ampliar dichos sola-

res como lo requería la Junta. En el de autos nada hay que demuestre que el recurrente no pueda cumplir con el Reglamento, por lo tanto, no creemos que los artículos 51 y 54, supra, deben ser aplicados.

██ En cuanto a la segunda parte de este señalamiento en el que se alega que se cometió error al exigir facilidades mínimas para las calles 1, 2, 3 y 4, convenimos con el recurrente y opinamos que la Junta no está facultada para hacer tales requerimientos. Dichas calles fueron urbanizadas y aceptadas como tal por el Gobierno Municipal de Adjuntas desde el año 1928. A partir de esa fecha, el recurrente no tenía control o dominio alguno sobre dichas calles. Así lo demuestra una certificación que forma parte de los autos, expedida por el secretario municipal del mencionado pueblo en el año 1928 al efecto de que: "La Asamblea por unanimidad acuerda aceptar y recibir finalmente la urbanización del Lic. Zayas Pizarro, denominada La Granja, sita en el barrio Pueblo de Adjuntas, extremo Este de la Calle Rodulfo González, en cuanto a las cuatro calles que ya tiene terminadas, las cuales calles por la presente pasan a formar parte de la urbe o zona urbana de acuerdo con la Ley, pudiendo dicho interesado proceder a la construcción de las casas que crea convenientes en las referidas cuatro calles, previa aceptación final del Departamento de Sanidad y los permisos que exijen las leyes y reglamentos sobre la materia para tales construcciones." Aparece también una carta oficial expedida por el Departamento de Sanidad en el año 1928, la cual en su parte pertinente dice así: "Después de una inspección hecha por el Ingeniero Auxiliar, Sr. Oliver a los terrenos de la urbanización de su propiedad, sita en la jurisdicción de Adjuntas, me es grato manifestarle que habiendo sido las calles Núms. 1, 2, 3 y 4 afirmadas y construídas de acuerdo con los planos aprobados por este Departamento, por la presente se aceptan dichas calles para los fines de edificación en las mismas."

Ambas certificaciones demuestran que dichas calles habían sido transferidas al Gobierno Municipal de Adjuntas en el año 1928. Además, la Ley núm. 69 de 1925, supra, al amparo de la cual se llevó a efecto la urbanización objeto de este caso, dispone en su sección 3, pág. 367, que:

"Una vez aprobada definitivamente por el Gobierno Insular y por el Municipio una urbanización, se entenderá que ésta entra a formar parte de la urbe, y la conservación de sus calles y demás servicios públicos quedan a cargo y serán propiedad del municipio correspondiente."

Siendo ello así, la Junta no puede exigir al recurrente que dote de pavimentos con superficie asfáltica, aceras, encintados y cunetas a unas calles que estaban ya urbanizadas y transferidas al Municipio de Adjuntas cuando comenzó a regir la Ley y Reglamento de Planificación. Véanse: *Matos* v. *Junta de Planificación,* 66 D.P.R. 439; *Rodríguez* v. *Registrador,* 66 D.P.R. 772; *Wilcox* v. *Registrador,* 67 D.P.R. 475. La Junta sí está facultada para ordenar al urbanizador que provea las acometidas que fueren necesarias para dar a los solares radicados en dichas calles servicios de acueducto, alcantarillado y alumbrado, por ser estos servicios necesarios para la salud y bienestar de los adquirentes de dichos solares.

Por último, alega el recurrente que la Junta erró "al exigir la transferencia para usos recreativos de no menos de un 5 por ciento del área a lotificarse, incluyendo el área de las calles."

El artículo 10 de la Ley núm. 213 de 1942 ((1) pág. 1107), conocida por la Ley de Planificación, Urbanización y Zonificación de Puerto Rico, enmendada por la Ley núm. 475 de 15 de mayo de 1947,(¹) dispone en su parte pertinente que:

(¹)Si bien la Ley núm. 475 de 15 de mayo de 1947 ((1) pág. 1071) no entró en vigor hasta noventa días después de su aprobación, o sea después del 7 de agosto de 1947, fecha de la resolución original de la Junta de Planificación, sí estaba en vigor el 17 de diciembre de 1947, fecha en que la Junta denegó la moción de reconsideración del aquí recurrente.

". . . Dichos reglamentos podrán incluir en sus disposiciones . . . *reservas obligatorias* de un área mínima para dedicar a escuelas, parques y otros fines públicos, y para la extensión y modo como habrán de hacerse estas instalaciones, como condición previa para la aprobación de un plano de colindancias. . ." (Bastardillas nuestras.)

A tenor con dicho artículo se redactó el artículo 37 del Reglamento de Planificación núm. 3, el cual dispone que:

"*Artículo 37.*—Se dará la debida consideración a la designación de áreas convenientes para escuelas, parques y campos de recreo y deportes. Por lo menos el cinco por ciento (5%) del área total de toda lotificación propuesta y que incluya una nueva calle o calles, *se reservará y dedicará* legalmente para fines recreativos." (Bastardillas nuestras.)

Arguye el recurrente que este requerimiento es inconstitucional porque se le exige ceder para uso público parte de su propiedad sin compensación alguna, en contravención al párrafo 9, artículo 2 de nuestra Carta Orgánica, el cual, expresamente dispone que:

"La propiedad particular no será tomada ni perjudicada para uso público, a no ser mediante el pago de una justa compensación fijada en la forma provista por la ley."

Sostiene la Junta recurrida, en contrario, que ella tiene facultad para hacer tal requerimiento porque así la autoriza la Ley y Reglamento de Planificación, supra, y que dicha Ley y Reglamento son constitucionales, ya que el Estado puede hacer tal requerimiento en el ejercicio de su poder de policía. Sostiene, además, la Junta, que las palabras "reservará" y "dedicará" como han sido usadas en el estatuto y reglamento, significan lo mismo y son sinónimas de la palabra "transferir", que por consiguiente el estatuto y reglamento, al usar dichas palabras, contemplan una transferencia al Gobierno del área para dedicarse a parques.

Creemos que la reserva de cierta cantidad de terreno para dedicarse a parque en una urbanización es una medida necesaria y primordialmente en beneficio de la salud y se-

guridad públicas y que el Gobierno, ejerciendo su poder de policía, puede requerir a un urbanizador para que haga tal reserva. A este respecto, en el caso ·de *El Municipio de San Lorenzo* v. *Junta de Planificación*, 68 D.P.R. 646, dijimos:

"En varias decisiones se ha sostenido que el hecho de que una ley o reglamentación promulgada en el ejercicio del poder de policía, impida o restrinja el goce de ciertos derechos individuales sobre una propiedad, sin disponer el pago de compensación, no hace que la ley o reglamentación sea necesariamente inconstitucional por violar la cláusula del debido proceso o por expropiar propiedad privada para uso público sin compensación. Esas leyes, cuando son razonables y no trascienden los límites y propósitos del poder de policía del estado, no son consideradas como expropiadoras de propiedad privada para uso público y sí como reguladoras del uso y disfrute de la propiedad por su dueño. Si éste sufre algún perjuicio, el mismo es o *damnum absque injuria* o se considera compensado por la participación que el dueño de la propiedad habrá de tener en los beneficios que la ley trata de conseguir para toda la comunidad."

■ Sin embargo, la Junta sostiene que no solamente puede el dueño de una urbanización ser requerido para que reserve el 5 por ciento del área para fines de parque, sí que también puede ser requerido para transferir al gobierno el título sobre dicha área. Si hubiese alguna base para esta última contención en el estatuto y en el reglamento, se levantaría una seria cuestión constitucional que envolvería la alegada incautación de propiedad privada sin compensación. Pero esta cuestión no es necesario que la resolvamos, toda vez que no encontramos nada ni en el estatuto ni en el reglamento—los cuales deben ser interpretados, si es posible, en el sentido de evitar serias cuestiones constitucionales—que requiera afirmativamente la transferencia del título sobre el área de parque, del dueño al gobierno.

■ De conformidad con el artículo 10 de la Ley núm. 213 de 1942, supra, la Junta de Planificación puede exigir, como condición previa para la aprobación de una urbaniza-

ción, que el dueño de ésta reserve un área mínima para dedicarla a escuelas, parques y otros fines públicos. La reserva que del 5 por ciento haga el dueño de la urbanización para dedicarla a parques públicos, no equivale ni es sinónima con la transferencia de dicho 5 por ciento al Pueblo de Puerto Rico. El título en la propiedad continúa en el urbanizador aun cuando el uso del 5 por ciento sea de carácter público. En otras palabras, si por cualquier motivo desapareciera la urbanización—por fuego, ciclón, etc.—el urbanizador continuará siendo dueño de aquellos solares que no hubiese vendido y también del 5 por ciento reservado. Desde luego, que si el dueño desea voluntariamente traspasar dicho 5 por ciento al gobierno para determinados fines, así puede hacerlo.

No tenemos dudas en cuanto a la facultad de la Junta para exigir al aquí recurrente que reserve para usos recreativos no menos de un cinco por ciento del área a lotificarse. Esa reserva, además de estar autorizada por la Ley, está justificada como una medida necesaria para la salud y bienestar de las personas que han de vivir en esa urbanización y de la comunidad en general.

■ La resolución recurrida, en su parte dispositiva, dice así:

"Por la presente y tomando en consideración lo anteriormente expuesto, esta Junta de Planificación, Urbanización y Zonificación de Puerto Rico ACUERDA solicitar del urbanizador la presentación de los planos de construcción de la Calle núm. 6, así como el plano topográfico del área afectada por esta nueva calle, *requiriéndose el total cumplimiento con el Reglamento de Lotificación el cual dispone en su artículo 37. que deberá transferirse para usos recreativos no menos de un 5 por ciento del área a lotificarse* incluyendo el área de las calles; . . ." (Bastardillas nuestras.)

No es cierto que el citado artículo 37 del Reglamento disponga que el área reservada para fines recreativos deba ser transferida para uso del público, y mucho menos que esa

transferencia deba ser hecha sin que medie "el pago de una justa compensación fijada en la forma provista por la Ley."

El representante legal de la Junta nos dice en su alegato que después de una búsqueda en la jurisprudencia de las diferentes jurisdicciones sólo ha logrado encontrar un caso, *In Re Lake Secor Development Co.*, 141 Misc. 913, 252 N.Y.S. 809, en que se trata específicamente la cuestión que estamos considerando. Hemos estudiado cuidadosamente dicha decisión y encontramos que en la misma no se sostiene que la Junta de Planificación esté legalmente autorizada para obligar al urbanizador a transferir el espacio reservado para fines recreativos, sin recibir adecuada compensación. Nuestra Ley no impone tal obligación al urbanizador.

Nos damos cuenta del problema práctico de que el gobierno no puede ser autorizado para gastar fondos públicos para el establecimiento de parques en terrenos sobre los cuales no tiene título. Pero eso no constituye una justificación para que nosotros redactemos de nuevo el estatuto y el reglamento, para requerir la transferencia del título. Según están ahora redactados, el estatuto y el reglamento requieren solamente que el dueño reserve, no que transfiera al gobierno, un área para parque. Cualquier orden como la dictada en este caso, requiriendo el traspaso del título sin compensación, además de levantar una seria cuestión constitucional, va más allá de los términos claros del estatuto y del reglamento.

Por las razones expuestas, opinamos que la resolución recurrida debe ser modificada en los siguientes particulares:

1. Eliminando la condición impuesta por la Junta al recurrente al efecto de que "para formar y disponer de los solares números 1, 2, 3, 4 y 5 servidos por las calles 1, 3 y 4 y los solares números 14, 15, 16, 17, 18, 19, 20 y 21 servidos por las calles números 2, 3 y 4, se deberá dotar los mis-

mos de las facilidades mínimas, a saber: (1) calles pavimentadas con superficie asfáltica dotadas de sus aceras, encintados, cunetas, por haber pasado las mencionadas calles a formar parte de la zona urbana del Municipio de Adjuntas en marzo 31 de 1928. El recurrente quedará obligado a dotar dichos solares de las correspondientes acometidas individuales para servicios de acueducto, alcantarillado y alumbrado.

2. Eximiendo al urbanizador de la obligación de transferir para usos recreativos un área no menor del 5 por ciento del área a lotificarse, quedando obligado el urbanizador recurrente a reservar dicha área, para los indicados fines.

*La resolución recurrida, así modificada, será confirmada.*
El Juez Asociado Sr. De Jesús no intervino.