SUCESIÓN DE MARÍA VICENTA CARRASQUILLO, ETC., recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE HUMACAO, recurrido; SUCESIÓN DE JUAN DE LA SANTA, recurrente, *v.* EL REGISTRADOR DE LA PROPIEDAD DE HUMACAO, recurrido.

*Números:* O-67-236, O-67-246          *Resueltos:* 24 de abril de 1968

*Faustino R. Aponte* y *Arturo Aponte Parés,* abogados de los recurrentes; el Registrador recurrido no compareció.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

Estos recursos fueron consolidados a los fines de su tramitación ante este Tribunal en 25 de octubre de 1967.

En el de la Sucesión de María Vicenta Carrasquillo se solicita la revocación de la nota del Registrador denegando la inscripción a favor de los dos hijos legítimos de Doña María Vicenta Carrasquillo, de la mitad proindivisa de una finca de 56.50 cuerdas de terreno, más o menos como bienes de la sociedad conyugal con su esposo Don Juan de Jesús de la Santa, en la cual está comprendida una finca de 9½ cuerdas que la testadora aportó al matrimonio. A los fines de tal inscripción se presentó al Registro copia certificada de la escritura de testamento Núm. 53, otorgada en 1 de abril de 1889, por la referida causante ante el notario Don Bernardino Estevanez Nanclares acompañada del acta de defunción de dicha señora y el certificado de su matrimonio con Don Juan de Jesús de la Santa.

El Registrador denegó la inscripción (1) por no haberse consignado expresamente la hora del otorgamiento del refe-

rido testamento lo que lo hacía nulo; (2) por no acompañarse con dicho documento el recibo de pago o la carta de exención de pago de la contribución de herencia sobre los bienes hereditarios; y (3) por existir contradicción entre la cabida superficial de cincuenta y seis cuerdas, cincuenta centavos de otra con que aparece la finca en el Registro y la de sesenta y cinco cuerdas con que aparece en el testamento abierto y el escrito presentado. Consignó esto último como un defecto subsanable.

■ 1.—Incidió el Registrador al denegar la inscripción por no haberse consignado expresamente la hora del otorgamiento del referido testamento. El testamento en este caso se rige por la ley en vigor a la fecha de su otorgamiento. *Náter* v. *Navedo,* 39 D.P.R.. 787 (1929) ; *Landrón et al.* v. *Navedo,* 12 D.P.R. 265 (1907). El instrumento se otorgó en abril de 1889. Para esa fecha aun no había entrado en vigor el Código Civil español vigente en Puerto Rico al cambio de soberanía. Éste empezó a regir en este país en 1ro. de enero de 1890. *Torres* v. *Rubianes,* 20 D.P.R. 337, 345 (1914).

■ La legislación vigente en la fecha del otorgamiento del referido testamento era la Novísima Recopilación. Muñoz Morales, *Compendio de Legislación Puertorriqueña y sus antecedentes,* pág. 11; cf. *Torres* v. *Rubianes,* 20 D.P.R. 337, 344, 348 (1914) ; *Rodríguez* v. *San Miguel,* 4 D.P.R. 105, 116 (1903). Ésta nada dispuso sobre las formalidades que rigen el otorgamiento de los testamentos. Pero se dispuso en su Ley 3, Título 2, Libro 3° que "las contiendas que se no pudieren librar por las leyes deste nuestro libro y por los dichos fueros, mandamos, que se libren por las leyes de las Siete Partidas." La Ley Núm. 103 del Título 18 de la partida 3ª sólo requiere que se indique "en que logar fue fecha el testamento, et ante quáles testigos, et el día, et el mes

et la era." El término "era" quiere decir el año. (¹) De manera que a la referida fecha del otorgamiento del testamento en cuestión la ley en vigor no exigía que se indicase en el mismo la hora de su otorgamiento.

2.—Se apunta que el Registrador incidió al denegar la inscripción por no haberse justificado el pago de la contribución de herencia o su exención.

Se arguye que la causante falleció en 9 de abril de 1891 de manera que la ley aplicable para determinar si se paga o no contribución de herencia es la que regía entonces y como para esa fecha no se imponía tal contribución en Puerto Rico, los recurrentes no estaban obligados a justificar el pago de la misma o la exención de tal pago. Tienen razón.

Por disposición expresa del Art. 12 de la Ley Núm. 99 de 29 de agosto de 1925, según ha sido posteriormente enmendada (13 L.P.R.A. sec. 901) ". . . ningún registrador de la propiedad inscribirá en los libros a su cargo, ningún instrumento ni fallo, sentencia o auto judicial autorizado, dictado o emitido en relación con la división, distribución o entrega de dichos bienes [del finado] a menos que se hayan presentado el recibo o recibos expedidos por el Secretario de Hacienda . . . ." Este precepto de ley es obligatorio para los registradores y al presentarse para su inscripción cualquier documento a virtud del cual se dividan, distribuyan o entreguen bienes de una persona fallecida, es el deber de ellos, antes de proceder a la inscripción del mismo, cerciorarse de que el recibo acreditativo del pago de la contribución de herencia expedido por el Secretario de Hacienda ha sido acompañado, o de que en defecto del recibo se ha presentado un certificado demostrativo de que la propiedad

_____

(¹) Ilustración notable de esta Ley es el testamento del Rey Don Alfonso X copiado a continuación del Prólogo de las Siete Partidas. Al final de este testamento el escribano del Rey quien escribió el testamento añadió, como parte del mismo, lo siguiente: "El cual testamento fué fecho en Sevilla, domingo, ocho días de noviembre era de mil trescientos veinte é un años. Testigos que fueron llamados é rogados . . . ."

objeto de la inscripción solicitada está exenta del pago de la contribución de herencia. *Antongiorgi* v. *Registrador*, 78 D.P.R. 346, 348 (1955); *Nido & Cía.* v. *Registrador*, 74 D.P.R. 789, 800 (1953); *Noguera* v. *Registrador*, 72 D.P.R. 195, 198 (1951); *Blanco* v. *Registrador*, 70 D.P.R. 17, 22 (1949). El Registrador no tiene discreción alguna en cuanto a eximir de las obligaciones impuestas por la ley o los reglamentos. *Nido & Cía.* v. *Registrador*, supra; *Mari* v. *Registrador*, 72 D.P.R. 888, 890 (1951); *Ramos* v. *Registrador*, 69 D.P.R. 708, 711 (1949); *Rivera* v. *Registrador*, 64 D.P.R. 461, 476 (1945). El caso de *Rovira* v. *Registrador*, 21 D.P.R. 415 (1914), es distinto al de autos. En aquel caso la ley declaraba exentos a la viuda y los hijos del causante.

▮▮▮ Sin embargo, a los fines de la contribución de herencia, la ley en vigor a la fecha en que muere una persona es la que debe aplicarse. *Tesorero* v. *Tribl. de Contribuciones y Azopardo*, 70 D.P.R. 565, 568 (1949). La primera ley de contribución sobre herencia comenzó a regir en Puerto Rico en 31 de enero de 1901—Secs. 94–105 Ley de Rentas de 31 de enero de 1901 (Leyes de Puerto Rico 1900–1901). La ley actual, que es la Ley Núm. 99 de 29 de agosto de 1925, según ha sido enmendada (13 L.P.R.A. secs. 881 a 905), comenzó a regir a los 90 días de su aprobación, o sea, el 27 de noviembre de 1925. Del acta de defunción de la causante, el cual se acompañó con la escritura de testamento, aparece que la causante falleció en 9 de abril de 1891. Es indubitablemente claro que para esa fecha no se imponía contribución alguna sobre las herencias en Puerto Rico. De manera que procede concluir que el requisito prescrito por el Art. 12 de la actual ley no es de aplicación y que el Registrador no estaba obligado por ley alguna a exigir el cumplimiento de un requisito como ése bajo las circunstancias antes relacionadas.

3.—Por el tercer apuntamiento se alega que incidió el Registrador al determinar que existe una diferencia de ca-

bida entre la finca inscrita en el Registro y la finca que se describe en el testamento, circunstancia que a juicio del Registrador constituye un defecto subsanable.

Doña María Vicenta Carrasquillo, en la cláusula sexta del referido testamento declaró "como bienes de la actual sociedad conyugal, una estancia compuesta de sesenta y cinco cuerdas más o menos . . . en cuya estancia descrita están comprendidas las nueve y media cuerdas aportadas al segundo matrimonio."

Sin embargo, en el escrito de los recurrentes que acompañó la escritura de testamento, los recurrentes solicitaron del Registrador la inscripción a favor de la mitad proindivisa de la finca de 56.5 cuerdas que consta inscrita en el Registro de la Propiedad.

Las 9.5 cuerdas a que se hace referencia en el testamento las aportó Doña María al matrimonio y por lo tanto son bienes privativos de ella por disposición de ley. Art. 1299 del Código Civil (31 L.P.R.A. sec. 3631).

Según el Art. 61 del Reglamento Hipotecario (30 L.P.R.A. sec. 919), "se inscribirán bajo un solo número si los interesados lo solicitaren, considerándose como una sola finca . . . Cuarto. Las piezas de tierra colindantes que pertenezcan a un mismo dueño . . . ."

La finca descrita en el Registro como de 56.5 cuerdas, según veremos en la discusión del segundo recurso consolidado, pertenecía a la sociedad conyugal compuesta de Doña María y Don Juan de la Santa.

Provee el Art. 21 de la Ley Hipotecaria (30 L.P.R.A. sec. 46), en parte que "Los dueños de bienes inmuebles o derechos reales por cualquier título universal o singular que no los señale y describa individualmente, podrán obtener su inscripción presentando dicho título con el documento, en su caso, que pruebe haberles sido aquél transmitido y justificando con cualquier otro documento fehaciente que se hallan comprendidos en él los bienes que tratan de inscribir."

■ Aunque de una lectura literal de la citada disposición se desprende que se exige que se justifique con documento fehaciente cuáles son los bienes comprendidos en la transmisión de que se trata, los tratadistas, así como varias resoluciones de la Dirección General de los Registros de España, son de opinión que las inscripciones a favor del causante justifican cumplidamente y de un modo fehaciente cuáles son los bienes que por la muerte del causante pasan al sucesor. Así se han manifestado, *cuando no se han descrito los bienes en el testamento.* Morell, *Comentarios a la Legislación Hipotecaria,* T. 2, págs. 498–499; Galindo y Escosura, *Comentarios a la Legislación Hipotecaria de España,* T. 2, págs. 246–247; Beraud y Lezón, *Tratado de Derecho Inmobiliario,* Vol. 1, págs. 392–444; Roca Sastre, *Derecho Hipotecario,* T. II, pág. 185; Ignacio de Casso, *Derecho Hipotecario o del Registro de la Propiedad,* págs. 299–300. Véanse, además, Resoluciones de la Dirección General de los Registros de 1 de julio de 1863; 7 de octubre de 1880; 14 de diciembre de 1894; 26 de julio de 1905. Para inscribir el derecho hereditario no es indispensable la presentación de instancia en que se indiquen las finca del causante. Debe el Registrador hacer la oportuna búsqueda con el fin de determinar los bienes que aparecen inscritos en el Registro de la Propiedad a nombre del testador a la fecha de su muerte.

■ Galindo y Escosura, supra, informan que en el caso de que el Registrador dude de la identidad de los bienes que se tratan de inscribir, podrá exigir otro documento fehaciente que acredite que son los mismos que constan inscritos.

En el caso que nos ocupa, para inscribir el derecho hereditario de los recurrentes en la citada finca de 56.5 cuerdas, no se requería la descripción de ésta en el testamento ni en ningún otro documento.

La duda que pudo crearse en la mente del Registrador con motivo de la descripción incorrecta de la finca contenida en el testamento, debió disiparse al considerar el escrito de

los recurrentes que acompañó el testamento. En dicho escrito se describió correctamente la finca inscrita objeto de la herencia y en el mismo no se solicitó la inscripción de la finca de nueve cuerdas y media, la cual era privativa de la testadora y no constaba inscrita en el Registro de la Propiedad, por lo cual no se podía agrupar a la de 56.5 cuerdas como se pretendió hacer en el testamento.

Por lo tanto, carece de fundamento la anotación del referido defecto subsanable. De acuerdo con la doctrina previamente expuesta, la referida discrepancia en la cabida de la finca inscrita, la cual aparece al describirse la finca en el testamento, no constituye impedimento a la inscripción de la mitad proindivisa de la misma a favor de los dos herederos de la testadora de acuerdo con la voluntad de ésta expresada en el testamento en cuestión.

*Por lo tanto concluimos que debe revocarse la nota denegatoria del Registrador debiendo proceder éste a realizar la inscripción solicitada por los recurrentes.*

En el recurso de la Sucesión de Juan de la Santa Reyes se apunta que:

4.—Incidió el Registrador al denegar la inscripción del testamento por no aparecer inscrita previamente la propiedad a favor de los herederos de Doña María Vicenta Carrasquillo y por ser, además, nulo el testamento otorgado en Humacao por Doña María Vicenta Carrasquillo.

En la discusión del recurso de Doña María Vicenta Carrasquillo dispusimos del planteamiento de nulidad de su testamento.

En cuanto a la falta de inscripción a favor de los herederos de Doña María Vicenta Carrasquillo es de notar que sólo es necesario que esté inscrito el inmueble a favor de ellos, si fueran a transferirlo a los herederos de Juan de la Santa. A tales efectos dispone el Art. 20 de la Ley Hipotecaria (30 L.P.R.A. sec. 45), "Para inscribir o anotar el título en que se transfiera o grave el dominio o la posesión

de bienes inmuebles o derechos reales, deberá constar previamente inscrito o anotado el derecho de la persona que otorgue o en cuyo nombre se haga la transmisión o gravamen." Es el llamado principio de tracto sucesivo.

En el presente caso no se están transmitiendo bienes algunos por los herederos de Doña María Vicenta Carrasquillo. Se trata sencillamente de los bienes que Don Juan de la Santa y Reyes ha dejado a sus hijos por herencia y que según surge del testamento son veinte y ocho cuerdas de terreno más o menos, o sea, la mitad de la finca en cuestión. No procedía, por lo tanto, denegar la inscripción por estos fundamentos.

5.—Señala el recurrente que "incidió el Registrador al determinar que no surge con claridad del Registro de la Propiedad [a] cuál de las dos sociedades le pertenece la finca."

Para el 1888 Don Juan de la Santa y Reyes radicó un expediente justificando la posesión de 56.5 cuerdas de terreno que adquirió en el barrio Mariana de Humacao durante los años 1864 al 1887. En la inscripción de dicho expediente se dice que es casado. Surge de los autos que este señor contrajo matrimonio con María Vicenta Carrasquillo en 1 de septiembre de 1860 y que ésta murió en abril de 1891 siendo casada con dicho señor. El señor de la Santa contrajo matrimonio con su segunda esposa, doña María Luisa Costa y Lebrón, el 16 de agosto de 1891, siendo viudo. Claramente estaba casado con su primera esposa cuando adquirió esa finca, por lo que dicho inmueble pertenece a la primera sociedad de gananciales. La referida determinación del Registrador carecía de fundamento.

6.—Apunta el recurrente que incidió el Registrador al señalar la existencia de inexactitudes entre los nombres del causante de los recurrentes y su segunda esposa.

▮ El Registrador consignó como defecto subsanable la discrepancia existente entre el nombre de la segunda esposa que aparece en el certificado de matrimonio y en el tes-

tamento de Juan de la Santa como María Luisa Costa y Lebrón, y en el acta de defunción de dicho señor como Seferina Acosta.

Como el recurrente no adujo prueba, bien por acta judicial o notarial, de que se trataba de la misma persona, el Registrador estuvo justificado en consignar el defecto subsanable.

*El Registrador en el segundo recurso deberá llevar a cabo la inscripción solicitada con el defecto subsanable de la referida discrepancia de nombre.*